UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANAL JAMIL,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. CV 12-8474 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

       Plaintiff Manal Jamil filed this action on October 5, 2012. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 7, 15.) On June 17, 2013, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

       Having reviewed the entire file, the decision of the Commissioner is reversed and remanded for further proceedings so that Defendant may reassess Jamil's physical residual functional capacity in light of medical records submitted to the Appeals Council.

**I.**

## PROCEDURAL BACKGROUND

On May 29 and June 2, 2009, respectively, Jamil filed applications for supplemental security income and disability insurance benefits, alleging an onset date of July 17, 2008. Administrative Record ("AR") 27. The applications were denied. AR 27, 80-81. Jamil requested a hearing before an Administrative Law Judge ("ALJ"). AR 90-91. On July 29, 2010, the ALJ continued the hearing to review additional evidence and obtain a medical expert. AR 49-50. On December 6, 2010, the ALJ conducted a supplemental hearing at which Jamil, a medical expert and a vocational expert testified. AR 51-79. On February 3, 2011, the ALJ issued a decision denying benefits. AR 24-42. On August 6, 2012, the Appeals Council denied the request for review. AR 1-5. This action followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

The ALJ found that Jamil met the insured status requirements through December 30, 2009.  AR 29.

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Jamil has the following medically determinable impairments: degenerative disc disease of the lumbar spine, degenerative disc and joint disease of the cervical spine, bilateral carpal tunnel syndrome status post surgery on the left hand, osteoarthritis of the wrists and hands bilaterally, hypothyroidism, chronic headaches, obesity and major depressive disorder.  AR 30.  Her impairments do not meet or equal any listed impairment, including 1.04, 11.14 or 12.04.  AR 30-32.

Jamil had the residual functional capacity ("RFC") to perform light work except she can sit, stand and walk for six hours in an eight-hour workday; occasionally push and pull with her upper and lower extremities; occasionally

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry,* 468 F.3d at 1114.

3

engage in postural activities; occasionally handle and finger; cannot climb ladders, ropes or scaffolds; must avoid unprotected heights, hazardous machinery and temperature extremes; and can perform only simple, repetitive tasks. AR 33. She is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that she can perform such as conveyor belt baker worker, counter clerk and furniture rental clerk. AR 40-42.

### C. New Evidence Submitted to Appeals Council

After the ALJ's decision, Jamil submitted the medical records in Exhibits 27F-30F. Exhibits 27F-30F consist of records from Burbank Advanced Imaging, dated July 15, 2008 to January 10, 2011; records from Glendale Memorial Hospital, dated September 13, 2010 to January 20, 2012; a mental evaluation form from Dr. Gevorkian dated March 9, 2011; and physical capability evaluation forms from Ms. Melkonova, PPT, dated March 16 and 21, 2011. AR 583-640.

The Appeals Council considered the exhibits, made them part of the record and found no basis for changing the ALJ's decision. AR 1-2, 5.

Taking the new exhibits into account, Jamil argues that she "may meet or equal Social Security listing 1.04" and that "the ALJ's decision is not supported by substantial evidence, as this new evidence bolsters all of her contentions of disability at the hearing level." JS 3-5, 9.

The reviewing court's role is "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r*, 659 F.3d 1228, 1232 (9th Cir. 2011). The reviewing court considers both the ALJ's decision and the additional material submitted to the Appeals Council. *Brewes v. Comm'r*, 682 F.3d 1157, 1163 (9th Cir. 2012). To warrant remand, Jamil must demonstrate "a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).

4

Dr. Gevorkian's mental evaluation form (Exhibit 29F) does not warrant remand.  The ALJ rejected Dr. Gevorkian's letter because the record did not contain any mental health treatment records with Dr. Gevorkian or any other psychiatrist or psychologist.  AR 38.  The ALJ's finding remains supported by substantial evidence taking into account the new exhibit.  Jamil did not submit any treatment records from Dr. Gevorkian or anyone else.  Jamil submitted only a check-the-box form from Dr. Gevorkian that did not contain any explanation for the limitations assessed in the form.  AR 631-32; *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly rejected treating physician's conclusory check-list report); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may reject check-off reports that did not contain explanations for conclusions).

With respect to the newly submitted physical evidence, the Commissioner argues that the imaging results "are comparable to prior imaging results and do not change the weight of the evidence which the ALJ considered."  JS 8.  The Commissioner further argues that a physical therapist is not an acceptable medical source.

The new exhibits include an operative report from Glendale Memorial Hospital dated January 18, 2012.  AR 594.  Jamil had anterior C5-6 and C6-7 diskectomy/decompressions and intervertebral fusions with PEEK spacers, autogenous local bone graft, calcium phosphates, and anterior plating.  AR 594.  C5-6 and C6-7 disk material was sent to pathology, which showed extensive degenerative change.  AR 594, 596.  The new exhibits contain post-surgical radiological studies.

The 2012 operative report post-dates the ALJ's decision dated February 3, 2011.  However, the treatment records leading up to the surgery indicate that remand is appropriate for the ALJ to evaluate the new treatment records and determine Jamil's medical condition as of January 2011.  The ALJ noted that the objective findings in the record before him at the time indicated conservative

5

treatment and no radiculopathy, disc bulges, herniation, or serious degeneration. AR 34-35.

The new exhibits include a MRI of the lumbar spine dated January 10, 2011, which is compared to the MRI dated October 16, 2008 reviewed by the ALJ. AR 584-85; *compare* AR 34, 485-86. The findings at L4-L5 are comparable. AR 486, 584. At T12-L1, the 2008 study indicated "dessication and endplate changes with a disc osteophyte extending centrally posteriorly,k and inferiorly beneath the disc space, lodged centrally behind the L1 vertebral body with mild central canal stenosis." AR 485. The 2011 study showed desiccated disc space and a central extruded and sequestered disc herniation which is migrated inferior to this level for a length of 1 cm. "This is more accentuated than was present in comparison to the previous study. There is however no compromise of the conus medullaris. There is no foraminal stenosis."[2] AR 584.

The new exhibits include a MRI of the cervical spine dated January 10, 2011. AR 586-87. The 2008 MRI of the cervical spine indicated 2-3 mm posterior disc bulges at C5-6 and C6-7 elevating the posterior longitudinal ligaments exacerbated by disc desiccation and spondylosis deformans, and 1-2 mm posterior disc bulge at C4-5 elevating the posterior longitudinal ligament exacerbated by disc desiccation. AR 268. By contrast, the 2011 MRI of the cervical spine showed: (a) at C6-7, a 4 mm left paracentral extruded disc herniation, the rostral-to-caudal extent is 5 mm, and significant flattening of the left paramedian ventral cord with moderate stenosis; (b) at C5-6, a 3 mm right lateral extruded disc herniation, the rostral-to-caudal extent is 5 mm, and significant flattening of the right ventral lateral aspect of the cord and moderate spinal stenosis; and (c) at C4-5, a 2 mm central protrusion with minimal flattening

---

[2] The 2011 study also showed, at L3-4, a 2 mm far left lateral bulge in annulus without central or significant foraminal stenosis and minimal left subarticular lateral recess compromise. AR 584. This finding was not included in the impression.

6

of the ventral cord. AR 586.

The new exhibits contain a report from Dr. Salem, a neurosurgeon, on February 10, 2011, shortly after the date of the ALJ's decision. AR 613-15. Jamil reported "no change in her symptoms." AR 613. Dr. Salem reviewed the MRIs of the lumbar and cervical spine, and examined Jamil.[3] AR 613-14. Dr. Salem diagnosed lumbar spine mechanical pain with radiculopathy, cervical spine mechanical pain with radiculopathy and bilateral carpal tunnel syndrome. AR 614. Dr. Salem stated that Jamil "is a candidate for anterior cervical decompression and fusion C5 through C7," and "a candidate for lumbar spine fusion L4-L5." AR 614-15. Jamil "may also need a posterior cervical spine decompression and fusion at a later date." AR 614.

Accordingly, this matter is remanded to the Commissioner for consideration of Jamil's physical impairments in light of the new exhibits.[4]

### D. The ALJ's RFC Determination

Jamil contends the ALJ erred in not including all her limitations in her RFC. She claims the ALJ failed to account for her need to lie down during the day, antalgic gait, anxiety, neuropathy, and headaches.

The RFC determination measures the claimant's capacity to engage in basic work activities. *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986). The RFC assessment is a determination of "the most [an individual] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). It is an administrative finding, not a medical opinion. 20 C.F.R. § 404.1527(e)(2). The RFC takes into account both exertional limitations and

---

[3] Jamil states that Dr. Salem is a treating neurosurgeon.

[4] The Commissioner argues that Ms. Melkonova is not an acceptable medical source. On remand, the Commissioner is correct that physical therapists are not "acceptable medical sources," but are considered "other source" opinions that an ALJ may discount if he or she provides germane reasons for doing so. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

7

non-exertional limitations. "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas*, 278 F.3d 947, 956-57 (citation omitted).

The ALJ's RFC determination was that Jamil could perform light work, except she can sit, stand, and walk for six hours in an eight-hour workday; can occasionally push and pull with her upper and lower extremities; can occasionally engage in postural activities; can occasionally handle and finger; cannot climb ladders, ropes or scaffolds; must avoid unprotected heights and hazardous machinery; must avoid temperature extremes; and can perform only simple, repetitive tasks. AR 33.

### 1. Mental RFC

Substantial evidence supports the ALJ's mental RFC determination that Jamil could perform simple, repetitive tasks. Jamil argues that anxiety disorder was diagnosed by her treating providers. The ALJ cited Dr. Gevorkian's letter, dated July 11, 2009, in which Dr. Gevorkian noted the diagnoses of major depression, anxiety disorder, and post traumatic stress disorder. AR 38, 481. The ALJ discounted Dr. Gevorkian's letter because the record lacked evidence of any mental health treatment. AR 38, 481. The ALJ noted that Jamil had no history of psychiatric hospitalization. AR 38.

The ALJ cited the findings of Dr. Staub, who performed a complete psychiatric evaluation on July 31, 2009. AR 37, 439-45. Dr. Staub found Jamil coherent and organized with no tangentiality or loosening of associations; relevant and non-delusional; alert and oriented to time, place, person and purpose; and at least of average intelligence with no apparent problem with memory or intellectual functioning. AR 37, 442-44. Dr. Staub found Jamil to be "functioning adequately from a psychiatric perspective," and gave her a global

assessment of functioning ("GAF") score of 65.[5] AR 37, 444-45. Moreover, records indicated that in April 2008, Jamil showed no apparent problems with cognition, no suicidal or homicidal ideation, and no evidence of hallucinations or delusions. AR 37, 357-58. In May 2008, Jamil presented as grossly intact in all spheres of cognition. AR 37, 309. In December 2008, Jamil was oriented to person, place, time, and current events. AR 37, 255.

As discussed above, the ALJ's mental RFC determination remains supported by substantial evidence even in light of Dr. Gevorkian's March 2011 opinion.

### 2. Physical RFC

Because this matter is being remanded for consideration of the new exhibits regarding Jamil's physical impairments, the ALJ is free to reconsider the physical RFC on remand.

### E. Credibility

Jamil contends the ALJ improperly discounted her credibility.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*, 504 F.3d at 1035-36. At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Jamil's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 33.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her

---

[5] A GAF of 65 indicates mild symptoms. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Text Revision 2000).

9

symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). The ALJ found that Jamil's statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent they were inconsistent with the RFC assessment. AR 33.

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing SSR 88-13) (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ discounted Jamil's credibility based on poor effort during consultative examinations, sporadic work history and daily activities. AR 34.

An ALJ may rely on lack of cooperation or poor effort during examinations to discount a claimant's credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ noted that Dr. Staub found Jamil to be not cooperative, genuine or truthful at her psychiatric examination. AR 34, 442. The ALJ noted that Jamil had zero grip strength upon physical examination, yet was able to perform light dusting and

10

shop for groceries.⁶ AR 34, 215-16, 450. Inconsistencies between reported symptoms and activities support an adverse credibility finding. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010). An ALJ may rely on poor work history to discount a claimant's credibility.⁷ *See Thomas*, 278 F.3d at 959. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

### F. Lay Witness Testimony

Jamil contends the ALJ improperly discounted her son's testimony.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane each witness.'" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (citation omitted).

Jamil's son, Ziad Jamil, submitted a Function Report – Adult – Third Party, dated June 29, 2009. AR 205-12. The ALJ noted Mr. Jamil's cumulative observations that Jamil had difficulty lifting, walking, climbing stairs, squatting, sitting, bending, kneeling, standing, talking, using her hands, reaching, using her memory, completing tasks, concentrating, understanding, following instructions, and in getting along with others. AR 39, 210. The ALJ gave Mr. Jamil's report "little weight" and found that it conflicted with the observations of the consultative physicians and medical expert. AR 39. The ALJ did not err. *see Valentine*, 574 F.3d at 694 (ALJ may properly reject cumulative lay witness testimony when ALJ

---

⁶ At the hearing, Jamil testified that "I can't do anything." AR 64.

⁷ The ALJ noted that Jamil came to the United States in 1994 and did not start working until 2002. AR 34. Jamil points to her testimony that she attended a community college but left without getting an Associates Degree, which is a two-year degree. AR 56-57. There is no indication that community college consumed eight years.

11

gives clear and convincing reasons for rejecting claimant's testimony).

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and this matter is remanded for further proceedings so that Defendant may reassess Jamil's physical residual functional capacity in light of medical records submitted to the Appeals Council.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: November 21, 2013

ALICIA G. ROSENBERG
United States Magistrate Judge